## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SHAWN RUSSELL,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )  Civ. No. 15-860-SLR
                                        )
CORPORAL SUZANNE LOWMAN,                )
TROOPER RYAN KIRCHENBAUER,              )
CORPORAL ADALBERTO GARCIA,              )
and SERGEANT JOHN LLOYD,                )
                                        )
          Defendants.                   )

### MEMORANDUM

At Wilmington this 10th day of February, 2017, having reviewed defendants' motion

for summary judgment and the papers submitted in connection therewith, the court

issues its decision based on the following reasoning:

1. **Background.** Plaintiff Shawn Russell ("plaintiff") filed a complaint against the

above named defendants related to his detention by police on September 25, 2013.

More specifically, plaintiff alleged in his complaint that, "[a]s a direct and proximate

result" of defendants' conduct, "committed under color of state law," he was

> deprived of his Fourth Amendment right to be free from unreasonable
> force, the excessive use of force, false arrest, illegal search and seizure,
> and to be secure in his person and property and he was deprived of his
> Fourteenth Amendment rights of being free from malicious prosecution
> and he was denied his liberty without due process of law.  As a result,
> [he] suffered and continues to suffer harm in violation of his rights under
> the laws and Constitution of the United States, in particular the Fourth
> and Fourteenth Amendments thereof, and 42 U.S.C. [§] 1983.

(D.I. 1 at 8) After the completion of discovery, defendants moved for summary judgment. The court has jurisdiction over the pending matters pursuant to 28 U.S.C. §§ 1331 and 1343.

2. **Undisputed facts.** On September 25, 2013, Sergeant John Lloyd ("defendant Lloyd"), the head of the Delaware State Police ("DSP") Drug Unit, received information from a confidential informant that an individual named William Camp ("Camp") was distributing heroin in New Castle County, and that Camp would be making a sale of heroin that night at a local restaurant. Defendant Lloyd assembled a stakeout crew of officers at the restaurant. The officers first saw Camp's vehicle arrive. They then saw a second vehicle (a Suburban) pull up in close proximity to Camp's car. The Suburban left, and defendant Lloyd directed Corporal Adalberto Garcia ("defendant Garcia") to follow. The remaining officers proceeded to detain Camp. Camp told the officers that the driver of the Suburban had the drugs, and that Camp had directed him to leave. (D.I. 36[1] at 132-37; D.I. 47 at 2)

3. With that information, defendant Lloyd put a broadcast over the radio for defendants Garcia, Corporal Suzanne Lowman ("defendant Lowman"), and Trooper Ryan Kirchenbauer ("defendant Kirchenbauer") to stop the Suburban. Defendants Lowman and Kirchenbauer were in the same vehicle and heard the radio broadcast to stop the Suburban as part of a drug investigation. They activated their emergency equipment and pulled the Suburban over on the right shoulder of west Route 273. (D.I. 36 at 113-14, 137; D.I. 47 at 2) "As part of the stop, Plaintiff's vehicle was searched. . .

---

[1]Page numbers referenced are to the assigned A-#.

. After the vehicle stop and search, Plaintiff was transported to Delaware State Police Troop 2 Barracks." (D.I. 47 at 2) "While Plaintiff was detained at the barracks, he was subjected to a strip search and after approximately 30 minutes was released. Several days after Plaintiff's release, Defendant Sergeant Lloyd applied for and obtained a warrant for Plaintiff's arrest charging him with possession of a controlled or counterfeit substance. Plaintiff was later indicted by a Grand Jury on the same charge. On April 14, 2014 the Attorney General for the State of Delaware nolle prossed all charges against the Plaintiff." (D.I. 47 at 3)

4. Plaintiff and defendants have given different accounts of what happened during the stop and what happened at the police station where plaintiff was subsequently detained. Plaintiff no longer disputes, however, that defendants "had a legitimate reason to stop" plaintiff's car, and that defendants had "cause to detain the plaintiff and bring him back to Troop 2 for questioning." (D.I. 38 at 7)

5. **Standard of review.** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not

3

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

6. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

4

7. **Excessive force claims.** Plaintiff claims that one (or more) law enforcement officers at the stop struck him in the face, and that one of said officers grabbed plaintiff's face and put his hands in plaintiff's mouth while the other officers were striking plaintiff in the back. (D.I. 47 at 3) Defendants contend that no force was used on plaintiff at any time during the course of the stop. (*Id.*) The parties agree that plaintiff's excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," as articulated in *Graham v. Connor*, 490 U.S. 386, 388 (1989). In this regard, the Supreme Court explained in *Graham* that "[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* at 394. Such excessive force claims, therefore, should be analyzed under the Fourth Amendment's "reasonableness" standard. *Id.* at 395.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion of the individual's Fourth Amendment interest'" against the countervailing governmental interests at stake. . . . Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," . . . , however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .

The "reasonableness" of a particular use of force must be judged from the

5

> perspective of a reasonable officer on the scene, rather that with the 20/20 vision of hindsight. . . .  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (citations omitted).

8. As noted, plaintiff at bar claims that "one or more of the Defendant troopers struck him in the face, grabbed his face and put his hand in his mouth while another trooper was striking him in the back." (D.I. 47 at 3)  Plaintiff cannot identify specifically which officers landed which blows.  He testified at his deposition, however, that he had not yet stopped the Suburban when the officers approached the vehicle, and that it was three Caucasian males who pulled him out of the Suburban allegedly with excessive force.  (D.I. 36 at 47, 49)  Defendants deny using any kind of force on plaintiff, recalling the stop as uneventful and plaintiff as compliant.  (*Id.* at 107, 117, 123)  Other than plaintiff's deposition testimony, there is no evidence[2] that any force, let alone excessive force, was exerted against plaintiff during the stop at issue.  The court must determine, therefore, whether plaintiff's deposition testimony should be deemed sufficient evidence to withstand a motion for summary judgment.  If plaintiff were proceeding pro se, the answer probably would be "yes," as the Third Circuit has accepted an inmate's testimony as true for purposes of summary judgment, noting that "'an inmate who is proceeding pro se . . . is in a decidedly difficult position from which to generate 'record evidence' on his behalf . . . [and] under these circumstances, his affidavits . . . are about

---

[2]For example, there is no contemporary medical report describing injuries sustained at the time.

6

the best that can be expected from him [at the summary judgment phase of] the proceedings.'" *Robinson v. Beckles,* 2016 WL 7364148, at *2 (3d Cir. Dec. 19, 2016) (citation omitted). Plaintiff at bar, of course, has been represented by counsel and there has been a full opportunity for discovery. The only evidence presented in opposition to that presented by defendants - to wit, plaintiff's deposition testimony - adds nothing to the bare allegations of the complaint.

9. The record does indicate that officers other than those named in the complaint may have participated in plaintiff's detention. (*See, e.g.,* D.I. 36 at 115, 124, 185-86) According to plaintiff, "[w]here the plaintiff has no recollection of the acts or was unable to observe what the officers were doing, the jury is entitled to draw reasonable inferences from circumstantial evidence," citing non-Third Circuit precedent such as *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); and *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990). In these cases, there apparently was no dispute that the plaintiff was in fact attacked; the only question was whether the plaintiff had to identify which of several officers present at the scene landed the blows. As explained by the court in *Miller*,

> while it is true that a plaintiff must establish a defendant's personal
> responsibility for any claimed deprivation of a constitutional right, a
> defendant's direct participation in the deprivation is not required. . . .
> "An official satisfies the personal responsibility requirement of § 1983
> if she acts **or fails to act** with a deliberate or reckless disregard of the
> plaintiff's constitutional rights." . . . Under this rule, police officers who
> have a realistic opportunity to step forward and prevent a fellow officer
> from violating a plaintiff's rights through the use of excessive force
> but fail to do so have been held liable.

*Miller*, 220 F.3d at 495 (emphasis in original) (citations omitted). The facts at bar, of

7

course, are one step removed from those examined in the case law cited by plaintiff, as the use of force itself is disputed.

10. In sum, the court is not addressing a motion to dismiss and, therefore, is not obligated to accept plaintiff's allegations as true. Plaintiff had the opportunity to conduct discovery, and has presented nothing more than his allegations, albeit in the form of deposition testimony. Under these circumstances and based on the record created during the litigation process, the court concludes that plaintiff has not presented sufficient evidence to enable a jury to reasonably find that the named defendants used excessive force during the September 25, 2013 stop. Defendants' motion for summary judgment is granted in this regard.[3]

11. **Remaining claims.** As the court understands these claims, plaintiff contends that, because no pills (illicit or otherwise) were found in the Suburban but, rather, were fabricated by defendant Lloyd, the strip search conducted at Troop 2, as well as his subsequent arrest and indictment are violative of plaintiff's constitutional rights. (D.I. 47 at 5) Plaintiff has conceded that "the statement made by Camp . . . gave the Defendants cause to detain the Plaintiff and bring him back to Troop 2 for questioning." (D.I. 38 at 7) The record indicates that DSP policy includes the following guidance as to strip searches: "A strip search will be utilized when the arresting officer reasonably suspects that weapons, contraband or evidence may be concealed upon

---

[3]In *Simpson*, cited by plaintiff, the court granted qualified immunity to an officer when there was "no indication whatever that he used any physical force against Simpson, let alone force that a reasonable officer would have known was excessive." 903 F.2d at 403. Given plaintiff's admission that defendant Lowman had no role in the alleged forceful conduct (D.I. 36 at 56), the court also grants defendants' motion for qualified immunity as to defendant Lowman.

the person or in the clothing in such a manner that it may not be discovered by previous search methods." (D.I. 36 at 153) The "Documentation Report" related to the strip search of plaintiff provides the reason given for the search: "The defendant [presumably plaintiff at bar] was found to be engaging in a suspected heroin investigation. The amount of heroin being delivered, which was confirmed by the defendant, was unable to be located. The defendant was being evasive in the alleged location of the heroin, therefore a strip search was conducted. The defendant was furthermore in possession of Oxycodone prescription medication." (Id. at 184) Plaintiff was detained at Troop 2 from 2327 to 0008 on September 23-24, 2013; the search was conducted between 2327 and 2331 on September 23, 2013. (Id.)

12. The police report filled out by defendant Lloyd described what happened during plaintiff's detention as follows:

Upon arrival at Troop 2, I was notified that the pills located in the Suburban were identified as non-controlled prescription heart medication.[4] At this point, I removed Russell from the Troop 2 holding cell area and conducted an interview with him. The interview was conducted on the basis of his being a witness to the Camp investigation. Russell denied the fact that he knew Camp and agreed his actions at TGIFriday's appeared suspicious. Russell reported he did not see anyone in the parking lot, therefore he left with the intent on going home. Russell stated the pills in the vehicle were not his. Russell was released from Troop 2.

(Id. at 158) According to plaintiff's deposition testimony, the Suburban did not belong to him but, rather, it belonged to a friend named Sherry Williams. (Id. at 34-36) According to defendant Lloyd, he interviewed plaintiff before he interviewed Camp; it was only after plaintiff's interview that Camp recanted any involvement of plaintiff in the

---

[4]Defendant Garcia has no recollection of either finding the pills or of identifying them. (D.I. 36 at 107)

9

heroin transaction. Subsequent to plaintiff's release, defendant Lloyd looked up the pills found in the Suburban, and saw that they were Oxycodone. (*Id.* at 142, 159) A warrant issued for plaintiff's arrest, based on a probable cause finding that plaintiff possessed five Oxycodone pills, a Schedule II narcotic, while operating a 2004 Chevrolet Suburban. (*Id.* at 147-50) An indictment was returned having the same charge, which charge was later dismissed.

13. The court recognizes that the probable cause findings that supported the arrest warrant and indictment in this case are a sufficient basis to grant defendants' motion for summary judgment on plaintiff's false arrest and malicious prosecution claims, *see Doe v. Attorney General of U.S.*, 659 F.3d 266, 273 at n.4 (3d Cir. 2011), or, alternatively, on defendants' motion for qualified immunity as to defendant Lloyd, *see Malley v. Briggs*, 475 U.S. 335, 345 (1986). There is also no evidence that plaintiff suffered a deprivation of liberty after the issuance of the arrest warrant. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). With respect to plaintiff's allegations that defendant Lloyd fabricated evidence to support the arrest warrant and indictment, the court notes, first, that defendant Garcia's lack of recollection is "insufficient to raise a genuine issue of material fact." *Metlife Securities, Inc. v. Holt*, 2016 WL 6683586, at 4 (E.D. Tenn. 2014). Moreover, the Third Circuit opinion upon which plaintiff bases his fabrication of evidence claim is not on all fours with the facts of this case, where plaintiff was never tried for the drug charge at issue and the harm addressed by the Third Circuit in *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), as amended (Sept. 16, 2016), was corruption of the trial process. I decline to

extend the reasoning in *Black* to the facts of record.

14. The court does find genuine issues of material fact regarding the strip search, not as to how it was conducted but whether it was justified in the first instance. The record is replete with inconsistencies in this regard. Specifically, the "Documentation Report" related to the strip search is completely at odds with defendant Lloyd's police report and its chronology, as well as with defendant Lloyd's deposition testimony.[5] As noted by plaintiff, strip searches are the most intrusive of searches conducted by governmental officials, and courts have "understood that the humiliating and essentially non-productive practice of strip searching pre-arraignment arrestees not held in the general population is an unreasonable search under the Fourth Amendment in the absence of reasonable suspicion." *Johnson v. Government of District of Columbia*, 734 F.3d 1194, 1206 (D.C. Cir. 2013) (Rogers concurring). Viewing the record in the light most favorable to plaintiff, the non-moving party, the court finds genuine issues of material fact as to whether defendant Lloyd had reasonable suspicion to believe that plaintiff was hiding contraband or other evidence. Defendants' motion for summary judgment is denied in this regard as to defendant Lloyd.

15. **Conclusion.** For the reasons stated, defendants' motion for summary

---

[5]For instance, the justification for the strip search identifies plaintiff as a suspect who "confirmed" the fact that heroin was being delivered, but was "evasive" about the heroin's location. Plaintiff was described in the "Documentation Report" as being in possession of Oxycodone. (D.I. 36 at 184) In contrast, defendant Lloyd's summary of his interview with plaintiff described plaintiff as a witness and the pills as heart medication, thus justifying plaintiff's release; the pills were not identified as Oxycodone until after plaintiff's release. (*Id.* at 158)

judgment is granted,[6] except for plaintiff's Fourth Amendment claim against defendant

Lloyd relating to the strip search.  An order shall issue.


Senior United States District Judge

---

[6]Plaintiff apparently is not pursuing his state law claims and, therefore, the court will not address them in this memorandum.

12